# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 10, 2010

## STATE OF TENNESSEE v. JERMARIO DIVINE WARFIELD

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-I-1560      J. Randall Wyatt, Jr., Judge**

**No. M2010-00834-CCA-R3-CD - Filed December 8, 2010**

The defendant, Jermario Divine Warfield, pled guilty in the Davidson County Criminal Court to aggravated burglary, a Class C felony, in exchange for a three-year sentence with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court ordered that the defendant serve his sentence in confinement, which he now appeals. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

David A. Collins (on appeal) and Tyler Yarbro (at trial), Nashville, Tennessee, for the appellant, Jermario Divine Warfield.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Robert Homlar and Benjamin J. Ford, III, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant pled guilty, via a criminal information, to the charge of aggravated burglary. The factual basis for the plea was recited by the State at the guilty plea hearing as follows:

> [O]n October 21st, 2009, the defendant went to a residence located at 3135 Brickdale . . . in Davidson County and kicked in the back door entering the

home where he removed a television, an X-BOX, and a safe containing a pistol. The defendant admitted to breaking into the residence and taking the items in a statement he provided to police after being Mirandized.

At the sentencing hearing to determine the manner of service of the defendant's sentence, Officer Lawrence Lacy, testifying in the capacity of the victim in this case and not as a police officer, stated that he resided at 3135 Brickdale Lane in Davidson County. The victim said that he arrived home from work the night of the burglary to find his back door kicked in, the inside of his home "trashed," and a number of his belongings missing. He recalled that the stolen items included his televisions, electronic equipment, jewelry, money, spare keys to his vehicles, plane tickets, and checkbooks. He noticed that his safe, containing a Glock pistol and personal papers, had also been removed from the house as well as items of sentimental value that had been passed down from his father. The victim testified that none of the items were ever recovered, and he estimated that his total loss, not including extensive repairs to the back door, was $20,000.

On cross-examination, the victim acknowledged that it was his understanding that other individuals, who were juveniles, were arrested along with the defendant. He believed that the defendant and the juveniles may have known his nephew and that was how he came to be the target of the crime.

Detective William Pate testified that when questioned, the defendant initially did not admit his participation in the burglary but, when confronted with the evidence, acknowledged that he and others, who were juveniles, were involved. The defendant also admitted to Detective Pate that he had returned to the scene an hour later with a car so he could steal the safe.

Detective Pate testified that the defendant offered some help in trying to recover the stolen gun, but Detective Pate believed that "he could have possibly done a little better" in that the defendant was well-acquainted with the person to whom he claimed to have given the gun. Detective Pate stated that the involved juveniles admitted that they knew the victim was a police officer and saw the victim's uniforms hanging in the house, but the defendant denied seeing the uniforms.

The eighteen-year-old defendant testified that he "bounced around" between living with his mother and grandmother during his childhood, but he reconnected with his mother when he was fourteen years old. The defendant admitted his involvement in the burglary, but he denied knowing that the home belonged to a police officer and said that the home was not chosen for any particular reason. The defendant said that he did all he could to try to help the police recover the gun. He stated that he knew the victim's gaming system had

been sold, but he did not know what happened to any of the other items. The defendant said that he had met with the director of Grandpa's House, a rehabilitation program, in the event he was not sentenced to confinement. He expressed that he would be willing to follow the rules of the program because he felt that he could receive the proper care there.

At the conclusion of the hearing, the trial court ordered that the defendant serve his sentence in confinement.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in denying him an alternative sentence of probation, community corrections, or split confinement. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6) (2006)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard

offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2006).

A defendant who receives a sentence of ten years or less is eligible for probation, subject to certain exceptions. Tenn. Code Ann. § 40-35-303(a) (2006). Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b). The burden is on the defendant to show the denial of probation was improper. Id.; see also State v. Summers, 159 S.W.3d 586, 599-600 (Tenn. Crim. App. 2004) (citing Ashby, 823 S.W.2d at 169); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) (stating that "[a] criminal defendant seeking full probation bears the burden on appeal of showing the sentence actually imposed is improper, and that full probation will be in both the best interest of the defendant and the public").

There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by Hooper, 29 S.W.3d at 9-10. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

To qualify for placement in a community corrections program, an offender must meet all of the following criteria:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;

> (B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

> (C) Persons who are convicted of nonviolent felony offenses;

> (D) Persons who are convicted of felony offenses in which the use or

possession of a weapon was not involved;

> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

> (F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1) (2006).

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2006). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

In determining the defendant's sentence, the trial court observed that the defendant had a "lengthy juvenile record" in addition to pending theft of property, possession of a weapon, and resisting arrest charges in another county. The court also considered the severity of the crime in that even though the defendant would have been apprised that the home belonged to a police officer because of the victim's uniforms, he continued with the burglary – "trashing" the victim's home and stealing, among other things, a gun. In light of these considerations, the trial court expressed that it would not place the defendant on probation or "in some program today."

Although the trial court did not explicitly discuss the principles of sentencing or any enhancement or mitigating factors, upon *de novo* review, we find no error in the trial court's decision to deny the defendant an alternative sentence. The mitigating factors the defendant argues he was entitled to, that his conduct neither caused nor threatened serious bodily injury

and that he assisted the authorities in locating or recovering any property or person involved in the crime, carry little, if any, weight. First, the defendant's stealing a gun and releasing it into the community could hardly be said to pose no danger. Second, the defendant's assertion that he helped the police try to locate the gun is called into question by Detective Pate's testimony that the defendant was not as helpful as he could have been, considering he was acquainted with the person who received the gun.

Moreover, the nature and circumstances of the offense, the defendant's social history, and his questionable credibility as it reflects on his potential for rehabilitation, weigh against a grant of probation or other alternative sentence. The record indicates that the defendant should have been on notice that the home belonged to a police officer, yet he continued in his endeavor, causing extensive damage and stealing $20,000 worth of property, and even returned an hour later to steal the victim's safe. Among the items stolen was a gun, which the defendant released into the community by giving it to a friend who supposedly then gave it to an individual named "Big Danny." The presentence report reflects that the defendant has smoked marijuana since the age of fourteen, did not finish high school, has never been employed, and did not know with whom he could reside if he received probation. The defendant's credibility is questioned in that he claimed to have not known that the burglarized home belonged to a police officer, yet his accomplices told Detective Pate that they were aware of such information. In addition, Detective Pate found the defendant less than forthcoming in his efforts to help the police locate the stolen gun. We conclude that the trial court did not err in denying the defendant an alternative sentence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE